The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Stephenson. The appealing party has shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission reverses the Opinion and Award of Deputy Commissioner Stephenson and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the Workers' Compensation Act.
2. An employment relationship existed between the plaintiff and the employer at all times relevant to this claim.
3. This is a claim in which the plaintiff alleges the following: that she became disabled on or about April 18, 2003 as a result of an occupational disease, to wit: cystocele (fallen bladder) and uterine prolapse, which required surgery and which also led to a lumbar disc problem at L5-S1.
4. The average weekly wage in this case is $1,141.12.
5. Plaintiff was out of work completely on the following dates:
• April 18, 2003 through July 6, 2003
• July 26, 2003 through September 11, 2003
• October 11, 2003 to the present
6. Plaintiff worked light duty for employer-defendant on the following dates:
• July 7, 2003 through July 25, 2003
• September 12, 2003 through October 10, 2003
7. Since April 18, 2003 and as of the date of the Hearing, Plaintiff had received S A benefits in the amount of $15,773.55. Since the Hearing, Plaintiff has continued to receive S A benefits on a weekly basis.
8. The parties agree that should the Commission find that Plaintiff is entitled to disability benefits, then defendants will be entitled to a credit in the amount of the S A benefits paid. In addition, the parties agree that if benefits are awarded, Plaintiff will be entitled to payment of the difference between $688.58 ($674.00 — maximum compensation rate — plus $14.58 — supplemental workers' compensation benefit) and the amount of the weekly S A benefit for the time period indicated by the Commission.
9. The parties stipulated into evidence, without need for further authentication or verification, the following exhibits:
a) Pre-trial Agreement
b) Medical Records (pre-injury and post-injury)
 c) Employment Records (wages, attendance, Employee history, attendance memo, incident report and pre-work screen)
d) I.C. Forms (18, 19, 61, 28B, 33 and 33R)
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 38 years old, weighed 185 to 190 pounds and stood 5'8" tall. She worked as a tire builder at Kelly Springfield and had been employed there since November 1997. Prior to 2001, plaintiff worked 12-hour shifts. Since 2001, she worked on 3rd shift, from 11:00 p.m. to 7:00 a.m., 6 days a week, for 48 hours per week. Plaintiff testified that she also worked overtime.
2. Plaintiff is a smoker, with a history of smoking 1 to 2 packs of cigarettes per day since age 19, with the exception of during her 3 pregnancies.
3. Plaintiff's childbirth history is as follows: Plaintiff's first pregnancy produced fraternal male twins born August 16, 1989. Plaintiff was 35 weeks pregnant and had gone into labor, but the twins were delivered via C-section. The boys weighed 4 pounds, 13 ounces and 5 pounds, 13 ounces; they were both 17 ½ inches long. Plaintiff weighed over 300 pounds at the time they were delivered. Plaintiff's next pregnancy produced a son who was born vaginally after several hours of labor in April 1992. He was full-term, weighing 9 pounds, 12 ounces. Plaintiff weighed more than 300 pounds at the time of delivery. Plaintiff's last son was born vaginally after several hours of labor on September 2, 1997. He was full-term, weighing 8 pounds, 13 ounces.
4. All four of Plaintiff's children live with her. Plaintiff is a single mother, having been widowed in 1999.
5. Plaintiff's surgical history is as follows: A day or two after her last child was born, Plaintiff underwent a tubal ligation procedure. Plaintiff also underwent a "tummy tuck" procedure in 2000.
6. Plaintiff is a first stage tire builder for defendant. A first stage tire builder takes the rubber and components and puts them together on a tire-building machine to make a carcass. The components include liner, toe guard, gum chafer, apex, beads, ply, and sidewall.
7. Plaintiff's job involved lifting rolls of inner liner, weighing from 65 to 90 pounds, and carrying the roll for a distance up to ten feet. This can occur anywhere from 6 to 10 times per 8-hour shift.
8. Plaintiff's job involved lifting rolls of gum chafer, weighing from 60 to 80 pounds, which is also carried for a distance of up to ten feet, normally two times per 8-hour shift.
9. Plaintiff's job involved lifting rolls of toe guard, weighing from 65 to 95 pounds, also carried for a distance of up to ten feet, normally once or twice per 8-hour shift.
10. The sidewall is in a level-wind dolly, which is pushed and/or pulled over to the tire-building machine by the first-stage tire builder. The apex is also on a level-wind dolly, which is also pushed and/or pulled over to the tire-building machine.
11. The ply is stored on an A-frame, which is also pushed and/or pulled by the tire builder over to the tire-building machine.
12. The pushing and pulling of the various tire components on the dollies and A-frames requires the tire builder to exert up to 72 pounds of force. In addition, if the wheels on the dollies and A-frames are broken or impacted by rubber or string from the ply, they would be more difficult for the tire builder to move across the floor.
13. The first-stage tire builder job is a production job, and typically a tire builder is expected to build between 150 to 160 tires per 8 hour shift.
14. In March 2003, plaintiff began having problems with her abdomen and back, particularly, she was leaking urine, feeling pressure in her abdomen and feeling pain in her lower back.
15. Plaintiff sought treatment from Dr. Briggs, her family physician on April 8, 2003. Dr. Briggs diagnosed plaintiff with urinary incontinence and referred her to Dr. Heimbecker.
16. Plaintiff was diagnosed with first degree uterine prolapse and drop in the urethrovesical angle by Dr. Heimbecker on April 14, 2003.
17. Plaintiff returned to Dr. Heimbecker on April 17, 2003 with complaints of continued pelvic pain in her lower abdomen and her pelvis. At that time, Dr. Heimbecker took plaintiff out of work due to the lifting requirements of her job.
18. Dr. Heimbecker performed surgery on May 6, 2003, including a vaginal hysterectomy with a McCall's culdoplasty and anterior repair and a sling procedure for the stress urinary incontinence which was performed by Dr. Purvis.
19. Dr. Heimbecker released plaintiff to return to work with restrictions on June 30, 2003. On July 9, 2003, Dr. Heimbecker clarified plaintiff's restrictions as no lifting more than 25 pounds, and no pushing or pulling heavy equipment.
20. From July through mid-October of 2003, plaintiff was provided light duty work by defendant. On October 10, 2003, plaintiff was sent home from work by defendant, as there was no longer any light duty work available within her restrictions. As of the date of the hearing before the deputy commissioner, plaintiff remained unable to perform her regular duties, and had not returned to work.
22. Dr. Heimbecker testified that plaintiff's employment placed her at increased risk for developing uterine prolapse and cystocele than members of the general public.
22. Dr. Heimbecker also testified that plaintiff's employment was a contributing factor for developing uterine prolapse and cystocele.
23. Defendant presented the testimony of Dr. Williams, who indicated that heavy lifting was not a significant factor in development of uterine prolapse, and that plaintiff's position did not place her at increased risk of development of uterine prolapse.
24. The undersigned give greater weight to the opinions of Dr. Heimbecker, plaintiff's treating physician as defendant's expert witness, Dr. Williams, has never met with or examined plaintiff.
25. The greater weight of the evidence shows that the heavy lifting requirements of plaintiff's job placed her at an increased risk for developing pelvic prolapse, as compared with members of the general public who are not equally exposed to heavy lifting.
26. The greater weight of the evidence shows that the heavy lifting that plaintiff performed in her job was a significant, or very important, contributing factor in the development of her pelvic prolapse.
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff's pelvic prolapse is due to causes and conditions characteristic of and peculiar to her employment with defendant, is not an ordinary disease of life to which the general public not so employed is equally exposed, and therefore, is an occupational disease. N.C. Gen. Stat. § 97-53(13); Rutledge v. Tultex Corp., 308 N.C. 85, 93,301 S.E.2d 359, 365 (1983).
2. Plaintiff is entitled to receive total disability compensation for the following periods of time: April 18, 2003 through July 6, 2003, and October 11, 2003 continuing until plaintiff returns to work or until further order of the Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to medical compensation for all related medical expenses incurred, or to be incurred, as a result of her pelvic prolapse. N.C. Gen. Stat. § 97-25.
4. Defendant is entitled to a credit as stipulated by the parties. N.C. Gen. Stat. § 97-42.
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to a reasonable attorney's fee approved, and subject to the credit owed, defendant shall pay plaintiff total disability compensation at the rate of $674.00 per week for the following periods of time: April 18, 2003 through July 6, 2003, and October 11, 2003 continuing until plaintiff returns to work or until further order of the Commission.
2. A reasonable attorney's fee of twenty-five percent of the total compensation awarded to plaintiff is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel in on lump sum of the accrued amount due plaintiff, and thereafter by deducting every fourth compensation check due plaintiff.
3. Defendant shall pay for all related medical expenses incurred or to be incurred by plaintiff as result of her pelvic prolapse.
4. Defendant shall pay costs.
This the __ day of January, 2006.
 S/ _______________________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/ _________________________ THOMAS J. BOLCH COMMISSIONER
 S/ _________________________ CHRISTOPHER SCOTT COMMISSIONER